E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
JASMIN YANG (Cal. Bar No. 255254)
YUJIN CHUN (Cal. Bar No. 306298)
Assistant United States Attorney
     Federal Building, Suite 7516
     300 North Los Angeles Street
     Los Angeles, California 90012
     Telephone: (213) 894-8827 (Yang)-0929 (Chun)
     Facsimile: (213) 894-7819
     E-mail: jasmin.yang@usdoj.gov
           yujin.chun@usdoj.gov

Attorneys for Lynne K. Zellhart

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| DONALD LEO MELLEIN,<br><br>       Plaintiff,<br><br>       v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>       Defendants. | No. 2:23-cv-07970-RGK-MAR<br><br>**LYNNE K. ZELLHART'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:   March 4, 2024<br>Hearing Time:   9:00 a.m.<br>Ctrm:         850<br><br>Honorable R. Gary Klausner |

# TABLE OF CONTENTS

DESCRIPTION                                                                                      PAGE

TABLE OF AUTHORITIES ................................................................................ii

NOTICE OF MOTION AND MOTION TO DISMISS ........................................v

MEMORANDUM OF POINTS AND AUTHORITIES ......................................1

I.      INTRODUCTION ...........................................................................................1

II.     STATEMENT OF FACTS ..............................................................................2

        A.      USPV's Indictment and Warrant Application.....................................2

        B.      Plaintiff's Box at USPV ......................................................................3

III.    ARGUMENT ..................................................................................................3

        A.      Plaintiff's *Bivens* Claims Fail Because They Arise in a New *Bivens* Context And Multiple Special Factors Counsel Hesitation Against Extending Implied Constitutional Tort Liability ..........................................3

                1.      This Court Has Already Dismissed Nearly Identical *Bivens* Claims Against Agent Zellhart .......................................................4

                2.      Plaintiff's *Bivens* claims present a new context.......................4

                3.      Special Factors Counsel Against Judicially Implying a *Bivens* Remedy .......................................................................................6

        B.      Agent Zellhart Is Entitled to Qualified Immunity......................................10

                1.      Plaintiff fails to allege a claim for judicial deception against Agent Zellhart. ..........................................................................11

                2.      It was not clearly established that the inventory search was unconstitutional...........................................................................12

        C.      The Statute of Limitations Bars Plaintiff's *Bivens* Claims against Agent Zellhart........................................................................................13

        D.      Plaintiff's Breach of Bailment and Non-Constitutional Tort Claims Against Agent Zellhart Must Be Dismissed Because The United States Is The Only Proper Defendant..........................................................14

        E.      The FAC's Ninth Cause of Action Should Be Dismissed .........................15

IV.     CONCLUSION..............................................................................................15

# TABLE OF AUTHORITIES

DESCRIPTION                                                                          PAGE

**Federal Cases**

*Ashcroft v. Al-Kidd,*
  563 U.S. 731 (2011) ...................................................................... 10

*Ahmed v. Weyker,*
  984 F.3d 564 (8th Cir. 2020) ...................................................... 5

*Annappareddy v. Pascale,*
  996 F.3d 120 (4th Cir. 2021) ...................................................... 5

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
  403 U.S. 388 (1971) .............................................................. 4, 5

*Bivens." Hernandez v. Mesa,*
  140 S. Ct. 735 (2020) ................................................................. 3

*Blanchard v. County of Los Angeles,*
  2022 WL 17081308 (C.D. Cal. Aug. 25, 2022) ............................ 14

*Cantu v. Moody,*
  933 F.3d 414 (5th Cir. 2019) ................................................ 5, 9

*Carlson v. Green,*
  446 U.S. 14 (1980) ...................................................................... 4

*Davis v. Passman,*
  442 U.S. 228 (1979) ................................................................... 4

*District of Columbia v. Wesby,*
  138 S. Ct. 577 (2018) ................................................................ 10

*Egbert v. Boule,*
  596 U.S. 482 (2022) ........................................................ *Passim*

*Farah v. Weyker,*
  926 F.3d 492 (8th Cir. 2019) ...................................... 10, 5, 6, 9

*Finkelstein v. Jangla,*
  816 F App'x 98 (9th Cir. 2020) ................................................ 11

*Gray v. Jenkins,*
  2023 WL 5941751 (C.D. Cal. July 17, 2023) ............................. 7

*Green v. Hall,*
   8 F.3d 695 (9th Cir. 1993) ................................................................ 14

*Green v. Tennessee Valley Auth.,*
   2006 WL 8439729 at *1 (C.D. Cal. Apr. 21, 2006) ................................ 14

*Harlow v. Fitzgerald,*
   457 U.S. 800 (1982) ......................................................................... 10

*Harper v. Need,*
   71 F.4th 1181 (9th Cir. 2023) ............................................................. 4

*Kam-Almaz v. United States,*
   682 F.3d 1364 (Fed. Cir. 2012) ......................................................... 15

*Lance v. United States,*
   70 F.3d 1093 (9th Cir. 1995) ............................................................. 15

*Lanuza v. Love,*
   899 F.3d 1019 (9th Cir. 2018) ............................................................ 8

*Liston v. Cnty. of Riverside,*
   120 F.3d 965 (9th Cir. 1997) ........................................................ 11, 12

*Mejia v. Miller,*
   61 F.4th 663 (9th Cir. 2023) ............................................................ 4, 7

*Prescott v. United States,*
   2022 WL 1051081 (C.D. Cal. Mar. 7, 2022) ......................................... 7

*Price v. Peerson,*
   2014 WL 12579814 (C.D. Cal. Feb. 12, 2014) ..................................... 14

*Quintero Perez v. United States,*
   8 F.4th 1095 (9th Cir. 2021) .............................................................. 5

*United States v. Bowhay,*
   992 F.2d 229 (9th Cir. 1993) ........................................................... <u>13</u>

*United States v. Lopez,*
   547 F.3d 364 (2d Cir. 2008) ............................................................. 13

*Ziglar v. Abbasi,*
   137 S. Ct. 1843 (2017) ............................................................. *passim*

*Valadez-Lopez v. Chertoff,*
   656 F.2d 851 (9th Cir. 2011) ........................................................... 13

iii

*Vega v. United States,*
    881 F.3d 1146 (9th Cir. 2018) ........................................................................ 7

*W. Ctr. for Journalism v. Cederquist,*
    235 F.3d 1153 (9th Cir. 2000) ...................................................................... 13

*White v. Pauly,*
    137 S. Ct. 548 (2017) (per curiam) ....................................................... 10-11

**Federal Statutes**

28 U.S.C. § 1495 ............................................................................................ 10

28 U.S.C. § 2513 ............................................................................................ 10

28 U.S.C. § 2679 ..................................................................................... *passim*

28 U.S.C. § § 1346, 2671 ............................................................................... 14

**Other**

Fed. R. Civ. P. 12 ........................................................................................... vi

Rule 7-3 ..................................................................................................... 1, vii

Section III.A, supra ....................................................................................... 15

iv

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that, on March 4, 2024 at 9:00 a.m. or as soon thereafter as they may be heard, Defendant Lynne K. Zellhart will, and hereby does, move this Court for an order dismissing the claims asserted against her by the First Amended Complaint. This motion will be made in the Roybal Federal Building and Courthouse before the Honorable R. Gary Klausner, United States District Judge, located at 255 East Temple Street, Los Angeles, CA 90012.

Agent Zellhart brings this motion under Fed. R. Civ. P. 12(b)(6) on the following grounds:

1. Plaintiff's *Bivens* claims against Agent Zellhart fail because they arise in a new context from the cases approved by the Supreme Court and special factors counsel hesitation in extending *Bivens* to this new context;

2. Agent Zellhart is entitled to qualified immunity;

3. The statute of limitations bars Plaintiff's *Bivens* claims;

4. The United States has been substituted as defendant for Agent Zellhart pursuant to 28 U.S.C. § 2679(d)(2); accordingly Agent Zellhart is no longer the defendant to Plaintiff's state law claims in her individual capacity; and

5. Plaintiff's ninth cause of action fails to state a claim upon which relief may be granted, and to the extent it is construed to assert a Fifth Amendment claim, it is barred for the same reason as the *Bivens* claims.

This motion is made upon this Notice, the attached Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, and all pleadings, records, and other documents on file with the Court in this action, and upon such oral argument as may be presented at the hearing of this motion.

/ / /

/ / /

This motion is made following the conference of counsel pursuant to Local Rule

v

7-3 which was held on January 9, 2024.

Dated: January 16, 2024                      Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section


        /s/ Jasmin Yang
JASMIN YANG
Assistant United States Attorney

Attorneys for Lynne Zellhart

vi

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

U.S. Private Vaults ("USPV") was a safe deposit box business that rented boxes anonymously and did not require customers to provide any form of identification. *See Order re Court Trial* in *Snitko v. United States*, 2:21-cv-04405-RGK-MAR ("*Snitko*") Dkt. 140, attached to the concurrently filed Request for Judicial Notice ("RJN") as Ex. 1 at 002-003. Due to USPV's anonymity, its boxes were "regularly used by unsavory characters to store criminal proceeds, a fact both known to and desired by USPV's principals." *Id.* at 003. The government investigated USPV, eventually indicted it, and obtained and executed a warrant to seize its nest of safe deposit boxes.

Although the other items in his safe deposit box were returned, Donald Mellein ("Plaintiff") brings claims against FBI Agent Lynne Zellhart, in her personal capacity, concerning 63 cold coins he claims the FBI failed to return.[1]

Plaintiff's *Bivens* claims against Agent Zellhart fail because they arise in a new *Bivens* context the Supreme Court has never approved, and because special factors counsel against this Court extending implied constitutional tort liability to that new context. *See Egbert v. Boule*, 596 U.S. 482 (2022). Agent Zellhart is also entitled to qualified immunity, since it was not clearly established that her alleged actions were unconstitutional, as evidenced by the Court's holding in *Snitko* that the government did not exceed the scope of the warrant. *See Snitko* Dkt. 140, RJN Ex. 1 at 13.

Plaintiff's non-*Bivens* claims must also be dismissed. Via the Attorney General's certification pursuant to 28 U.S.C. § 2679(d)(2), the United States has been substituted as the defendant for those claims in place of Agent Zellhart. These claims are barred by

---

[1] Plaintiff has made inconsistent statements about the number of coins he alleges are missing. In his prior complaint, Plaintiff alleged that 120 coins were missing (*Donald Leo Mellein, et al. v. United States*, 2:21-cv-06588-RGK-MAR ("*Mellein I*") at Dkt. 1 ¶ 3). Plaintiff then claimed that 110 coins were missing. *Id.* ¶ 4. After the FBI gave Plaintiff 47 coins, Plaintiff's counsel then stated that the 20 of the coins provided by the FBI weren't even his, but that Plaintiff "accept[s] these 20 gold coins as substitute property." *Mellein I* at Dkt. 36-2 ¶ 12.

the Westfall Act and the United States is the only proper defendant. Finally, Plaintiff's "as applied" Fifth Amendment claim fails to state any cognizable claim.

Because these legal defects are incurable, Plaintiff's claims against Agent Zellhart should be dismissed with prejudice.

## II.   STATEMENT OF FACTS

### A.   USPV's Indictment and Warrant Application

USPV was a safe deposit box facility that differed from traditional safe deposit box company in that it had longer hours of operation than most banks, allowed customers to access the vault with biometric scanners, and provided enhanced security and privacy by, among other things, providing keys to safe deposit boxes only to customers (and not to USPV employees). FAC ¶¶ 17-20.

On March 9, 2021, USPV was indicted for money laundering and drug trafficking. FAC ¶ 33. On March 17, 2021, the United States submitted applications to Magistrate Judge Steve Kim for search and seizure warrants. *Snitko*, Dkt. 122-3, RJN Ex. 2 at 018. The warrant application identified, among other items to be seized: "Nests of safety deposit boxes and keys, and documents and records referring or relating to them since 2019." *Id.* at 022. The warrant application also stated:

> In seizing the nests of safety deposit boxes, agents shall follow their written inventory policies to protect their agencies and the contents of the boxes. Also in accordance with their written policies, agents shall inspect the contents of the boxes in an effort to identify their owners in order to notify them so that they can claim their property;

*Id.* at 023. Agent Zellhart signed the affidavit in support of the warrant application. FAC ¶ 34.

Plaintiff alleges that Agent Zellhart "misled the magistrate judge about the government's plans to seize the contents of the boxes for forfeiture" and that she "supervised and instructed the Search Defendants to conduct an unlawful search of Don's box under the guise of the inventory doctrine and conducted the purported

2

inventory in a way that exceeded the express limitations in the warrant and was instead a pretext for an investigatory search of the box." FAC ¶¶ 143-144.

### B. Plaintiff's Box at USPV

Plaintiff rented box 224 at USPV. FAC ¶ 22. Plaintiff alleges that prior to the seizure, box 224 contained cash, a gold bar, 110 gold coins, and personal documents. FAC ¶ 32.

On March 22, 2021, the United States executed its search and seizure warrant at USPV and seized the nest of safe deposit boxes. FAC ¶ 52. Plaintiff alleges he filed a claim with the FBI for his property on April 19, 2021. FAC ¶ 77. Plaintiff alleges he received a Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings dated May 21, 2021 but subsequently learned on August 16, 2021 that the government was abandoning its efforts to forfeit the property. FAC ¶¶ 79, 81. The United States' inventory does not list the 110 gold coins Plaintiff claims were in his box. FAC ¶ 74. Plaintiff alleges that the government returned all of his cash, the gold bar, and some of the coins, but that 63 of the coins have not been returned. FAC ¶¶ 82-88.

## III. ARGUMENT

### A. Plaintiff's *Bivens* Claims Fail Because They Arise in a New *Bivens* Context And Multiple Special Factors Counsel Hesitation Against Extending Implied Constitutional Tort Liability

*Bivens* remedies are the product of what the Supreme Court has called an "ancien regime" where it "would imply causes of action" not present in the text of a law. *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1855 (2017). In the forty years since the original *Bivens* case, the Court has "consistently rebuffed requests to add to the claims allowed under Bivens." *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020). Even in a "conventional" Fourth Amendment case, with "almost parallel" allegations to *Bivens* itself, the Supreme Court now instructs courts to apply a special factors analysis, asking whether "the Judiciary is at least arguably less equipped than Congress to weight the costs and benefits of allowing a damages action to proceed." *Egbert*, 596 U.S. at 492. Applying that analysis

"in most every case," the Supreme Court stressed, leads to the same result: "no *Bivens* action may lie." *Id.* *Egbert* was reinforced in this Circuit in *Mejia v. Miller*, 61 F.4th 663, 669 (9th Cir. 2023) ("Under *Egbert*, rarely if ever is the Judiciary equally suited as Congress to extend *Bivens* even modestly."). "Essentially then, future extensions of *Bivens* are dead on arrival." *Harper v. Need*, 71 F.4th 1181, 1187 (9th Cir. 2023).

A plaintiff now only has two narrow paths to pursuing a *Bivens* action. If a plaintiff establishes that their claim qualifies as one of "the three *Bivens* claims the Court has approved in the past," then the Bivens claim may proceed (subject to other defenses). *Abbasi*, 137 S. Ct. at 1860. Alternatively, if the claim arises in a new context, a plaintiff must then establish that there are no "special factors [that] counsel[] hesitation" before a court may imply a new cause of action. *Id.* at 1857. Plaintiff cannot establish a viable *Bivens* claim through either path here.

### 1. This Court Has Already Dismissed Nearly Identical *Bivens* Claims Against Agent Zellhart

This Court has already dismissed nearly identical *Bivens* claims against Agent Zellhart in *Louis Loe v. United States*, 2:21-cv-03348-RGK-MAR ("*Louis Loe*") Dkt. 76, attached as Exhibit 3 to the RJN. The Court found nearly identical claims against Agent Zellhart would extend *Bivens* to a new context and that special factors counseled against such an extension of *Bivens* to this situation. *Louis Loe*, Dkt. 76, RJN Ex. 3 at 144. The same result is warranted here.

### 2. Plaintiff's *Bivens* claims present a new context.

Whether a claim presents a new context depends on whether the case is "different in a meaningful way from previous *Bivens* cases decided by th[e] [Supreme] Court." *Abbasi*, 137 S. Ct. at 1859. This requires a comparison with the only three cases in which the Supreme Court has previously recognized a *Bivens* remedy: *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); *Davis v. Passman*, 442 U.S. 228 (1979); and *Carlson v. Green*, 446 U.S. 14 (1980). Because search and seizure are primarily at issue "[t]he most analogous Supreme Court case" here "is *Bivens* itself."

4

*Quintero Perez v. United States*, 8 F.4th 1095, 1104 (9th Cir. 2021). But "coming closest" is still a far cry from "exactly mirror[ing] the facts and legal issues[.]" *Farah v. Weyker*, 926 F.3d 492, 498 (8th Cir. 2019). Even a case with "significant parallels to one of the [Supreme] Court's [three] previous Bivens cases," or a case presenting just a "modest extension" of one of them, "is still an extension" into a new context. *Abbasi*, 137 S. Ct. at 1864.

Plaintiff's claims against Agent Zellhart directly implicate several of the meaningful differences set forth by the Supreme Court. Foremost, the type of injury is different. Unlike in *Bivens*, where the plaintiff was personally subjected to a warrantless search, seizure, and arrest that resulted in "humiliation, embarrassment, and mental suffering," 403 U.S. at 389-90, here, Plaintiff was never personally seized or arrested. Rather, his alleged Fourth Amendment injury is confined to a property interest in a safe-deposit box in a strip-mall. See FAC ¶¶ 22, 32. The degree and kind of injury is radically different than the injury at issue *Bivens*.

The mechanism of injury also presents a new context. *Bivens* concerned a warrantless search from "stem to stern." 403 U.S. at 389. Here, the claims focus on a warrant – which was allegedly invalid for a variety of reasons – and the procedures for handling seized property. *See Annappareddy v. Pascale*, 996 F.3d 120, 135 (4th Cir. 2021) (finding new context because "Bivens involved [] the Fourth Amendment right to be free of unreasonable warrantless searches and seizures; [whereas] this case, by contrast, involves searches and a seizure conducted with a warrant") (emphasis in original). This difference not only establishes a new context by itself, but also reveals another meaningful difference from *Bivens*— significant attenuation between the individual defendant and the ultimate injury, an attenuation which was absent from *Bivens*. *See also Ahmed v. Weyker*, 984 F.3d 564 (8th Cir. 2020) (steps between allegedly fabricated warrant and execution involved "independent legal actors" and thus the "direct causal chain [present in Bivens] is missing."); *Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019). The same holds true here.

Plaintiff alleges that Agent Zellhart, "participated in securing and implementing a warrant that misled the magistrate judge about the government's plans to seize the contents of the boxes for forfeiture" and "misrepresented the true scope of the searches Defendants intended to conduct. . . ." FAC ¶¶ 107, 181. "This indirect mechanism of injury bears little resemblance to the straightforward claims from *Bivens*." *Farah*, 926 F.3d at 499.

Plaintiff's inventory search theory similarly presents a new context. Plaintiff alleges that it was always the government's plan to "seize the contents of the boxes for forfeiture and to search for evidence to support the forfeitures." FAC ¶ 143. This theory implicates an alleged large scale government operation with numerous actors that had various levels of involvement with inventorying hundreds of boxes. Not only does the theory present an "indirect mechanism of injury," it is also far more complicated than "the straightforward claims from *Bivens*." *Farah*, 926 F.3d at 499.

### 3. Special Factors Counsel Against Judicially Implying a *Bivens* Remedy

The ultimate question of the special factors analysis is which branch of government – the judiciary or Congress – is best equipped to "decide whether to provide for a damages remedy . . . ." *Egbert*, 596 U.S. at 492. *Egbert* instructs courts to consider "whether there is any rational reason (even one) to think that *Congress* is better suited to weigh the costs and benefits of allowing a damages remedy to proceed. *Id.*, 596 U.S. at 496. "If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a Bivens *remedy." Id.* at 492. "[E]ven a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy." *Id.* at 491. Plaintiff's allegations implicate several textbook "sound reasons" to hesitate and for the Court to "refrain from creating" the *Bivens* remedies Plaintiff requests.

### a. Plaintiff has alternative procedures for relief.

In *Abbasi*, the Supreme Court held that "the existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." *Id*. at 1865. "'[A]lternative

remedial structures can take many forms, including administrative, statutory, equitable, and state law remedies." *Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018). The FTCA is but one alternative remedial structure that counsels against an extension of *Bivens*. *See, e.g., Gray v. Jenkins*, 2023 WL 5941751, at *7 (C.D. Cal. July 17, 2023); *Prescott v. United States*, 2022 WL 1051081, at *4 (C.D. Cal. Mar. 7, 2022).

Concurrent with his claims against Agent Zellhart, Plaintiff has brought several claims under the FTCA. *See* FAC ¶¶ 100-138. This alternative remedial avenue counsels against extending *Bivens* to this context.

Furthermore, suppression of evidence is another remedy available when the government unlawfully seizes evidence, although Plaintiff was not charged with any crime as a result of the seizure. Instead, Plaintiff contends that Agent Zellhart should be held liable because she allegedly facilitated the unlawful seizure of evidence. But the fact that Plaintiff does not have the exact type of remedy available that he would prefer for that alleged wrong—recovering tort damages from Agent Zellhart—does not mean that there are no remedial processes available for the asserted wrong itself, an unlawful seizure.

In *Mejia v. Miller*, the ability to report misconduct of a Bureau of Land Management Employee to its Office of Inspector General constituted the existence of an alternative administrative remedy that foreclosed *Bivens* relief. 61 F.4th 663, 669 (9th Cir. 2023). *See also Egbert*, 596 U.S. at 497-98 (Border Patrol's investigation and grievance procedures provided alternative remedy). Similarly, here, Plaintiff's ability to submit a complaint to the Department of Justice's Office of Inspector General[2] concerning Agent Zellhart's allegedly wrongful conduct, is yet another alternative administrative remedy that discourages the extension of *Bivens* to a novel context.

---

[2] *See https://oig.justice.gov/hotline/submit_complaint*

   b.   *Bivens precludes holding Agent Zellhart Responsible for FBI Policy.*

A "*Bivens* action is not 'a proper vehicle for altering an entity's policy.'" *Abbasi*, 137 S. Ct. at 1860. Such claims still require hesitation if they "call into question the formulation and implementation of a general policy[.]" *Id.*; *see Lanuza v. Love*, 899 F.3d 1019, 1028 (9th Cir. 2018) ("special factors include . . . whether *Bivens* is being used as a vehicle to alter an entity's policy").

Plaintiff's claims against Agent Zellhart do just that and counsel hesitation. Plaintiff takes issue with Agent Zellhart's "one-time search procedures for the USPV boxes" (FAC ¶ 51) and asserts that the government should have created more "meaningful inventories" of the safety deposit box contents (FAC ¶ 59) and should have left the boxes locked (FAC ¶ 61). He alleges that Agent Zellhart "created instructions for searching the boxes that were calculated to uncover evidence to support forfeitures at the expense of safeguarding the contents." FAC ¶ 168.

Plaintiff's allegations evince an attempt "to alter an entity's policy" because they seek to force the FBI to conform to revised policies Plaintiff deems appropriate. Plaintiff's claims would require inquiry into discussions ranging from the best method for effectively inventorying the boxes (Fourth Amendment) to how the FBI's procedures for handling seized property fulfill its goal to seize criminal proceeds and return non-criminal property (Fifth Amendment). Plaintiff's attempt to change these policies counsels hesitation.

   c.   *Plaintiff's Bivens action would cause disruptive intrusion into the Executive Branch.*

Plaintiff takes issue with multiple steps taken in a large criminal investigation and prosecution into a complex criminal scheme. In demanding that implied tort liability be extended against an individual federal agent, he complains that the warrant, the search of his box, the procedure for claiming box contents, and the retention of box contents, were all unconstitutional. *See* FAC ¶¶ 175-206. But the inherent factual complexity of

8

each theory risks "burdening and interfering with the executive branch's investigative and prosecutorial functions." *Farah*, 926 F.3d at 500. The Fourth Circuit (*Annappareddy*), the Fifth Circuit (*Cantu*), and the Eighth Circuit (*Weyker* & *Ahmed*) all recognize that this is an "intrusive" interference into "sensitive functions of the Executive Branch" that courts must avoid. *Abbasi*, 137 S. Ct. at 1861. The problem is particularly severe because *Bivens* claims would impose *implied tort liability against an individual federal officer* (with a jury trial right, no less) into those executive functions, impacting and determining them, as opposed to normal judicial review (as with, for example, a request for evidentiary suppression).

The complexity of the case magnifies this inquiry. The government has alleged that USPV was a criminal business which engaged, in among other things, money laundering and drug trafficking." FAC ¶ 33. The suspected scheme involved numerous actors and entities executing a plan sophisticated enough to skirt federal banking laws. *See Snitko* Dkt. 122-3, Warrant Application, RJN Ex. 2 at 034, 087-092. Just as in *Cantu*, where the fact that the case involved a "multi-jurisdictional investigation into transnational organized crime" counseled hesitation against extending a *Bivens* remedy, so too here does the expansiveness of the USPV investigation counsel hesitation. 933 F.3d at 424.

Plaintiff's claims against Agent Zellhart necessarily constitute an intrusion into law enforcement operations that reflect choices about how to securely and efficiently inventory property, and hesitation in expanding *Bivens* to this novel context is warranted.

        d.    *Existing legislation suggests that the absence of a monetary remedy against individuals under the circumstance alleged is more than inadvertent.*

Finally, the absence of a damages remedy against federal officers under these circumstances does not mean that one should be authorized here. Rather, "congressional silence might be more than 'inadvertent.'" *Abbasi*, 137 S. Ct. at 1862 (citation omitted). In *Farah*, which concerned allegations that an investigator falsified evidence, the Eighth

Circuit explained this inference in the context of statutes intended to compensate wrongly convicted defendants. *See Farah*, 926 F.3d at 502 (citing to the Hyde Amendment for baseless prosecutions, and 28 U.S.C. § 1495 and 28 U.S.C. § 2513 for unjust convictions). Such statutes cut against creating a cause of action for defendants aggrieved by improper investigations, but not convicted. *Id.* It reasoned "that Congress has expressly provided a damages remedy for some victims of this particular type of injury, but not for others, suggests that it considered the issue and made a deliberate choice" not to compensate those others. *Id.* That reasoning applies in this case as well. "Congress' failure to provide a damages remedy" for those claiming damage from criminal investigations but who are not convicted "might be more than mere oversight, and that congressional silence might be more than 'inadvertent.'" *Abbasi*, 137 S. Ct. at 1862. Accordingly, because "Congress might doubt the efficacy or necessity of a damages remedy" in this case, this Court should "refrain from creating the remedy." *Id.* at 1858.

## B. Agent Zellhart Is Entitled to Qualified Immunity

For the reasons stated above, the Court should not recognize a *Bivens* claim in this case. But if the Court were to recognize such a claim, Agent Zellhart would be entitled to qualified immunity. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). It does so by insulating government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

To be clearly established, a legal principle must be settled law, and it must clearly prohibit the officer's conduct in the particular circumstances before him[.]" *District of Columbia v. Wesby*, 138 S. Ct. 577, 581 (2018) (emphasis added). To determine whether an officer's conduct violates clearly established law, the formulation of the conduct "must be particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552

1  (2017) (per curiam) (citation and quotations omitted). As set forth below, Agent Zellhart
2  is entitled to qualified immunity because it was not clearly established under the specific
3  circumstances alleged that Plaintiff's constitutional rights were violated.

4                1.     <u>Plaintiff fails to allege a claim for judicial deception against Agent</u>
5                         <u>Zellhart.</u>

6       Plaintiff alleges that Agent Zellhart engaged in judicial deception because she
7  "misrepresented the true scope of the searches Defendants intended to conduct and failed
8  to disclose the plan to search the boxes for forfeitable property and for evidence to
9  support the forfeitures." FAC ¶ 181. "To overcome qualified immunity on a judicial-
10  deception claim, a plaintiff must 1) make a substantial showing of [an officer's]
11  deliberate falsehood or reckless disregard for the truth and 2) establish that, but for the
12  dishonesty, the [issuing of the warrant] would not have occurred." *Finkelstein v. Jangla*,
13  816 F App'x 98, 101 (9th Cir. 2020) (citation and quotations omitted). Plaintiff fails to
14  meet both prongs.

15       This alleged omission fails show a reckless disregard for the truth because
16  including it would have no bearing on "the inferences a magistrate will draw." *See*
17  *Liston v. Cnty. of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997), as amended (Oct. 9,
18  1997). Plaintiff's allegations concerning the government's "true plan" to conduct
19  forfeiture proceedings on some of the property in the USPV boxes cannot bear upon the
20  probable cause determination. This regards the government's alleged intent to implement
21  a future plan, as opposed to relating past observations of USPV. The "true plan" theory
22  also fails to qualify as a deliberate falsehood because, as Plaintiff concedes, the
23  government set forth an inventory process which it did perform. That the process later
24  evolved into forfeiture proceedings for some owners was not a deception because the
25  affidavit never made any claim to the contrary.

26       Even if all of the alleged omissions were included in the affidavit, probable cause
27  would still lie. As the Court already held:

28

… the omission of the Government's forfeiture preparations did not 'create[] [a] false impression. The affidavit was rife with details of prior investigations into individual USPV boxholders that resulted in forfeiture and it noted that the agents executing the warrant would inventory the contents of all individual boxes. Any reasonable magistrate would have inferred that the inventory could lead to the potential discovery of criminal proceeds in certain boxes, which would then lead to forfeiture.

*Snitko*, Dkt. 140, RJN Ex. 1 at 015-016.

The omission of the Government's forfeiture preparations did not 'create[] [a] false impression' or diminish the "fair probability" that USPV's boxes were evidence of a crime. This remains particularly so given the sheer scope of the criminality that the affidavit sets forth in detail.

        2.      <u>It was not clearly established that the inventory search was unconstitutional.</u>

The inventory search alleged in this case also did not violate clearly established law. The Court has already found that: (1) the inventory search did not violate the Fourth Amendment; (2) that Plaintiffs failed to prove that the inventory search was pretext for an impermissible investigatory motive; and (3) that the government did not exceed the bounds of the warrant. *Snitko*, Dkt. 140, RJN Ex. 1 at 014. The Court similarly already found that the government had not violated the Fourth Amendment in its warrant application and that omitting the fact that investigators were making preparations to forfeit the seized property did not detract from its showing of probable cause for the USPV warrant and that the government had not exceeded the warrant's requirements. *Id.* at 015-016. Agent Zellhart's affidavit states that the FBI would follow its written inventory policies to protect the agency from claims of theft or damage and that the agents would seek to identify the owners of the property and preserve the property for safekeeping. FAC ¶¶ 39-40.

While Plaintiff may argue that the Ninth Circuit might eventually reverse such

holdings and find that the inventory search was unconstitutional, that future possibility does not negate the fact that, at the time of the search, it was not "clearly established" that it was unconstitutional. Should the Ninth Circuit make such a future ruling, it would do nothing to defeat the application of qualified immunity, and would instead illustrate why it facially applies—the law was still uncertain on the date at issue.

Plaintiff's unadorned allegation that the search was in fact a "pretext for conducting an investigatory search" cannot save his claim. FAC ¶ 108. In *United States v. Bowhay*, 992 F.2d 229 (9th Cir. 1993), the plaintiff made a similar argument when an officer admitted that he "viewed [a] search as both an investigative and as an inventory search[.]" *Id.* at 231. However, the court still held that "the presence of an investigative motive [did] not invalidate the inventory search." *Id.* It reasoned that because "the department's policy was to search everything[,] the officer had no discretion" and thus his motive was beside the point. *Id.* This case is no different. Plaintiff alleges that the inventory procedure involved opening all boxes seized. FAC ¶ 57. More to the point, it is clearly established that motive is irrelevant under these circumstances. "[T]he Supreme Court has not required an absence of expectation of finding criminal evidence as a prerequisite to a lawful inventory search …[M]otivation [] cannot reasonably disqualify an inventory search that is performed under standardized procedures for legitimate custodial purposes." *United States v. Lopez*, 547 F.3d 364, 372 (2d Cir. 2008) (citations omitted).

## C. The Statute of Limitations Bars Plaintiff's *Bivens* Claims against Agent Zellhart

"Federal law determines when a *Bivens* claim accrues, [and] the law of the forum state determines the statute of limitations for such a claim." *Valadez-Lopez v. Chertoff*, 656 F.2d 851, 857 (9th Cir. 2011). A claim accrues when the plaintiff knows or has reason to know of the injury." *W. Ctr. for Journalism v. Cederquist*, 235 F.3d 1153, 1156 (9th Cir. 2000). In California, the statute of limitations for *Bivens* claims is two years. *Green v. Tennessee Valley Auth.*, 2006 WL 8439729 at *1 (C.D. Cal. Apr. 21, 2006).

Plaintiff's claims against Agent Zellhart are time-barred. Plaintiff alleges that: (1) Agent Zellhart made statements in the government's warrant application on March 17, 2021 (FAC ¶¶ 34-35); (2) the warrant was executed and the nest of safe deposit boxes were seized on March 22, 2021 (FAC ¶ 52); (3) during the week of March 22, 2021 his box was broken into (FAC ¶ 68); and (4) he submitted a claim to the FBI for the return of his property on April 19, 2021 (FAC ¶ 77). Plaintiff's claims against Agent Zellhart are time-barred as Plaintiff filed this action on September 22, 2023.

###### D.     Plaintiff's State Law Claims Against Agent Zellhart Must Be Dismissed Because The United States Is The Only Proper Defendant.

The United States has filed a Notice of Substitution for Agent Zellhart pursuant to 28 U.S.C. § 2679(d)(2) certifying that she was acting within her scope of federal employment relative to the claims alleged. In a civil action against a federal employee, the United States Attorney General may certify the employee was acting in the scope of his employment at the time of the incident on which the claim is based. 28 U.S.C. § 2679(d)(2). Once certification is made, the Federal Employees Liability Reform and Tort Compensation Act ("FELRTCA"), more commonly known as the "Westfall Act" requires the substitution of the United States as the defendant. 28 U.S.C. § 2679(b)(1); *see also Green v. Hall*, 8 F.3d 695, 698 (9th Cir. 1993)). "Under the terms of FELRTCA, the substitution of the United States leaves the plaintiff with a single avenue of recovery, the Federal Tort Claims Act ('FTCA'), 28 U.S.C. § § 1346, 2671 et seq." *Id.* at 698.

The United States has thus been substituted as the defendant for Plaintiff's state law claims against Agent Zellhart (Count IV (conversion and trespass to chattels), Count

14

V (breach of bailment)[3], Count VI (negligence)), and Bane Act claim (Count VII)[4]. Under the Westfall Act and the FTCA, the United States is the only proper defendant for such state law claims based on allegedly wrongful acts that a federal employee allegedly committed within the scope of her employment. *See Lance v. United States*, 70 F.3d 1093, 1095 (9th Cir. 1995). Insofar as the Plaintiff asserts state law claims against Agent Zellhart in her individual capacity, pursuant to the United States' substitution under 28 U.S.C. § 2679(d)(2), those claims do not apply to Agent Zellhart.

**E.   The FAC's Ninth Cause of Action Should Be Dismissed**

The last claim for relief, "Count XI: As-Applied Deprivation of Property Without Due Process of Law Under the Fifth Amendment Due Process Clause," does not ask for any monetary or declaratory relief, but simply is a legal argument challenging whichever law might prevent Plaintiff's claims. The claim should be dismissed for failure to state upon which relief can be granted, as it does not constitute a cause of action at all. To the extent this claim is construed as a *Bivens* claim against Agent Zellhart for Fifth Amendment violations, this claim is subject to dismissal for the same reasons why Plaintiff's Fourth Amendment *Bivens* claims fail. *See* Section III.A, *supra*.

**IV.   CONCLUSION**

For the foregoing reasons, the claims against Agent Zellhart should be dismissed with prejudice.

---

[3] Plaintiff also fails to plead an actionable breach of bailment claim against Agent Zellhart as there is no bailment relationship between her and the Plaintiffs. "A seizure, essentially by definition, lacks mutual intent. Thus, as the government correctly points out, a seizure pursuant to the government's authority…generally will not give rise to an implied-in-fact bailment contract." *Kam-Almaz v. United States*, 682 F.3d 1364, 1369 (Fed. Cir. 2012).

[4] Plaintiff cannot bring his Fourth Amendment claim under the guise of the Bane Act. *See Blanchard v. County of Los Angeles*, 2022 WL 17081308, at *3 (C.D. Cal. Aug. 25, 2022). Moreover, Plaintiff has failed to state a claim under the Bane Act as Plaintiff has not plead any use of "threats, intimidation or coercion." *Price v. Peerson*, 2014 WL 12579814, at *3 (C.D. Cal. Feb. 12, 2014). To the contrary, Plaintiff alleges that the FBI seized the contents of the safe deposit box in a warrant operation that was executed at a business in a strip mall.

Dated: January 16, 2024        Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

_____/s/ *Jasmin Yang*_____
JASMIN YANG
Assistant United States Attorney

Attorneys for Lynne Zellhart

## **Certificate of Compliance under L.R. 11-6.2**

The undersigned, counsel of record for Lynne K. Zellhart, certifies that this brief contains 5,119 words, which complies with the word limit of this Court's Standing Order.

/s/ *Jasmin Yang*_____
JASMIN YANG
Assistant United States Attorney