No JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:23-cv-7970-RGK-MAR | Date | March 14, 2024 |
|---|---|---|---|
| Title | *Donald Leo Mellein v. United States et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | | |
|---|---|---|---|
| Joseph Remigio | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiff: Not Present

Attorneys Present for Defendants: Not Present

**Proceedings:** (IN CHAMBERS) Order Re: United States' and Zellhart's Motions to Dismiss [DEs 62, 63]

## I.  INTRODUCTION

On December 19, 2023, Donald Leo Mellein ("Plaintiff") filed the operative First Amended Complaint ("FAC") against the United States of America (the "Government") and FBI agents Lynne Zellhart, Nathan Cherney, Kaare Mathison, Allen Grove, Christina Clyburn, and Blaire Fulcher. (ECF No. 45.) Plaintiff alleges numerous claims under federal and state law related to the FBI's alleged failure to return Plaintiff's property seized during a criminal investigation. Presently before the Court are the Government's and Zellhart's separate Motions to Dismiss all claims. (ECF Nos. 62, 63.) For the following reasons, the Court **GRANTS in part** the Government's Motion and **GRANTS** Zellhart's Motion.

## II.  FACTUAL BACKGROUND

This case is yet another chapter in the long legal saga of the FBI's criminal investigation of U.S. Private Vaults ("USPV"), a now defunct business located in Beverly Hills that provided storage for valuable goods. Plaintiff, a former USPV customer, alleges the following in the FAC:

Plaintiff stored numerous valuable items in a safe deposit box at USPV, including cash, a gold bar, and 110 gold coins. (FAC ¶ 2.) On March 22, 2021, pursuant to a warrant, the FBI searched USPV's business premises and seized various property, including Plaintiff's safe deposit box. (*Id.* ¶¶ 2–3.) The FBI later returned Plaintiff's cash, gold bar, and 47 gold coins. (*Id.* ¶ 6.) The remaining 63 gold coins—valued at $123,419—have seemingly "disappeared." (*Id.* ¶¶ 2, 6.)

The targets of the FBI's search were USPV's steel structures, or "nests," that contained individual safe deposit boxes within them. (*Id.* ¶ 36.) In the warrant application, Zellhart specifically represented that the FBI "sought to seize 'the nests of boxes themselves, not their contents.'" (*Id.* ¶ 37 (emphasis in original).) Moreover, the warrant application "promised . . . that the FBI would 'preserve

No JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-7970-RGK-MAR | Date | March 14, 2024 |
|---|---|---|---|
| Title | *Donald Leo Mellein v. United States et al.* | | |

. . . property'" held within safe deposit boxes "'for safekeeping' and return the property to the rightful owners." (*Id.* ¶ 3.) To keep the property safe, Zellhart further represented that the FBI would "follow . . . written inventory policies to 'protect [against] claims of theft or damage to the contents of the boxes.'" (*Id.* ¶ 39.) The magistrate judge granted the warrant application, but "specifically did not authorize a 'criminal search or seizure of the contents of the safety [sic] deposit boxes.'" (*Id.* ¶ 42.)

Notwithstanding her representations to the magistrate, Zellhart spearheaded "a separate plan—concealed from the magistrate judge who approved the warrant—to administratively forfeit all boxes containing property worth at least $5,000 (the FBI's minimum threshold for profitability), and to conduct investigatory searches of the boxes for evidence to support the forfeitures." (*Id.* ¶ 4.) Therefore, "[i]nstead of honoring its promises to safeguard the safe-deposit boxes and return the contents to the rightful owners, the government instead . . . [broke] into the safe-deposit boxes to look for property to forfeit and search[ed] for evidence to support the forfeitures." (*Id.* ¶ 56.) As part of that plan, Zellhart created "specialized one-time search procedures" that included the use of drug sniffing dogs, documenting "cash observations," and sending copies of paperwork to the asset forfeiture unit. (*Id.* ¶ 51.)

### III.  JUDICIAL STANDARD

Dismissal is appropriate under Federal Rule of Civil Procedure ("Rule") 12(b)(1) where a court lacks subject matter jurisdiction over the plaintiff's claims. Fed. R. Civ. P. 12(b)(1). The Court begins with the principle that "[f]ederal courts are courts of limited jurisdiction" and presumptively lack jurisdiction over an action. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 US. 375, 377 (1994). The burden of demonstrating subject matter jurisdiction rests on the party asserting jurisdiction. *Id.*

Under Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the plaintiff alleges enough facts to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* A plaintiff need not provide "detailed factual allegations" but must provide more than mere legal conclusions. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When ruling on a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). The Court must also "construe the pleadings in the light most favorable to the nonmoving party." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012). The Court, however, is "not bound to accept as true a

No JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-7970-RGK-MAR | Date | March 14, 2024 |
|---|---|---|---|
| Title | *Donald Leo Mellein v. United States et al.* | | |

legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Dismissal "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

## IV. DISCUSSION

Zellhart and the Government have separately filed Motions to Dismiss. The Court addresses each Motion in turn, beginning with Zellhart's.

### A. Zellhart's Motion to Dismiss

Plaintiff asserts three types of claims against Zellhart: (1) a claim for damages under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); (2) various state law claims; and (3) a Fifth Amendment due process claim. Zellhart argues that each of these claims should be dismissed. The Court discusses each claim in turn.

#### 1. Bivens Claim

Plaintiff asserts a claim for damages against Zellhart under *Bivens*. Zellhart argues that Plaintiff's *Bivens* claim fails because it arises in a new context that has not been previously recognized. The Court agrees.

Federal law did not historically provide a cause of action for damages to those whose constitutional rights were violated by federal officials. *See Ziglar v. Abbasi*, 582 U.S. 120, 130 (2017). This was because neither Congress nor the Constitution explicitly provided such a cause of action. *Id.* at 130–31. This changed with the Supreme Court's decision in *Bivens*. In *Bivens*, Federal Bureau of Narcotics agents violated the Fourth Amendment when they arrested the plaintiff without a warrant, handcuffed him in front of his family, threatened to arrest his family, searched his apartment, and subjected him to a visual strip search. *See Bivens*, 403 U.S. at 389. Faced with such egregious conduct, the Supreme Court found that "even absent statutory authorization," courts could recognize "an implied cause of action" for certain constitutional violations. *Abbasi*, 582 U.S. at 131.

Since *Bivens*, the Supreme Court has recognized an implied cause of action for money damages against federal officers on only two occasions: (1) a due process violation under the Fifth Amendment based on workplace discrimination, *Davis v. Passman*, 442 U.S. 228, 248–49 (1979); and (2) a violation of the Eighth Amendment's Cruel and Unusual Punishments Clause based on failure to provide medical care to an inmate, *Carlson v. Green*, 446 U.S. 14, 17–19 (1980). Since 1980, the Court has recognized no new *Bivens* claims, chiefly due to separation-of-powers concerns; "[i]n most instances . . . the Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability." *Abbasi*, 582 U.S. at 136.

No JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-7970-RGK-MAR | Date | March 14, 2024 |
|---|---|---|---|
| Title | *Donald Leo Mellein v. United States et al.* | | |

In 2018, the Supreme Court made clear that judicial creation of new *Bivens* claims is a "disfavored judicial activity," and introduced a demanding two-step inquiry that courts must undertake before doing so. *Id.* at 135. First, a court must determine "whether the plaintiff is seeking a *Bivens* remedy in a new context." *Lanuza v. Love*, 899 F.3d 1019, 1023 (9th Cir. 2018). If so, then the court must ask whether "special factors counsel hesitation," such that a new *Bivens* remedy should not be implied. *Id.* The Court begins by assessing whether Plaintiff's claim presents a new context.

    a.    *New Context*

*Bivens* claims are typically limited to the circumstances of *Bivens*, *Carlson*, and *Davis*, and a case presents a "new context" if it differs "in a meaningful way" from that "*Bivens* trilogy." *Abbasi*, 582 U.S. at 139. Virtually any other claim is a "new context" because "even a modest extension" of the original three *Bivens* cases "is still an extension." *Id.* at 147; *see also Ahmed v. Weyker*, 984 F.3d 564, 570 (8th Cir. 2020) ("If the test sounds strict, it is."). The Supreme Court has listed several non-exclusive factors that indicate a case might meaningfully differ from *Bivens*. Those factors include the "rank of the officers involved," the "constitutional right at issue," and the "generality or specificity of the official action." *Abbasi*, 582 U.S. at 139–40. After *Abbasi*, courts have also considered the type of injury suffered, along with "the mechanism of injury[] and the kinds of proof those injuries would require." *Farah v. Weyker*, 926 F.3d 492, 500 (8th Cir. 2020).

Plaintiff alleges that Zellhart violated his Fourth Amendment rights when she applied for a search warrant without disclosing to the magistrate judge that she had created special procedures for searching, seizing, and forfeiting the contents of USPV boxes that exceeded the scope of the warrant. (FAC ¶¶ 177–181.) Using the "meaningful difference" factors laid out above, the Court determines that Plaintiff's allegations reveal two meaningful differences that demonstrate a new *Bivens* context.[1]

First, the alleged injury differs from *Bivens*. *Bivens* involved federal agents operating without a warrant, who handcuffed and strip-searched the plaintiff while they searched his apartment, resulting in plaintiff's "humiliation, embarrassment, and mental suffering." *Bivens*, 403 U.S. at 389–90. Here, Plaintiff alleges, at most, indirect involvement by Zellhart in simply applying for a warrant and creating search procedures that resulted in Plaintiff's loss of property. Specifically, Plaintiff alleges that Zellhart made misrepresentations to the magistrate to obtain the warrant, while other agents performed the actual search that led to the property seizure. Other circuits have found similar cases involving allegations that a defendant made misrepresentations in a warrant application to be meaningfully different from *Bivens* and its straightforward warrantless search. *See, e.g., Annappareddy v. Pascale*, 996 F.3d 120, 135–36 (4th Cir. 2021) (finding that a search pursuant to a warrant presented different legal questions than the warrantless search in *Bivens*, and therefore presented a new context); *Ahmed*, 984 F.3d at 568 (finding a

---

[1] Because Plaintiff challenges a Fourth Amendment violation, the Court compares the allegations of this case to *Bivens*, as the only member of the "*Bivens* trilogy" that involved Fourth Amendment search and seizure violations.

No JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-7970-RGK-MAR | Date | March 14, 2024 |
|---|---|---|---|
| Title | *Donald Leo Mellein v. United States et al.* | | |

new context where defendants did not themselves enter plaintiffs' home but provided allegedly false information resulting in their arrest). Plaintiff also does not allege that he suffered emotional injuries to the extent of the *Bivens* plaintiff, further widening the gap between the two cases.

Second, the type of evidence necessary to prove Plaintiff's case differs from *Bivens*. *Bivens* required only an inquiry into the actions of arresting officers. Meanwhile, Plaintiff challenges the propriety of Zellhart's warrant application and special search procedures, requiring the Court to delve "into evidence before numerous decisionmakers," including the agents themselves and the magistrate judge. *Farah*, 926 F.3d at 499. In this manner, Plaintiff's claim requires "fact-checking and conscience-probing" that poses a great "risk of intruding on the investigatory and prosecutorial functions of the executive branch." *Ahmed*, 984 F.3d at 569; *Annappareddy*, 966 F.3d at 136.

For these reasons, the Court concludes that Plaintiff's claim presents meaningful differences from the claim in *Bivens*, and thus presents a new context for the doctrine. The Court next determines whether special factors counsel hesitation in creating a new *Bivens* claim.

b.  *Special Factors*

The focus of the "special factors" inquiry is "whether the judiciary is well-suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 582 U.S. at 136. The threshold for whether a factor "counsels hesitation" is "remarkably low." *Canada v. United States*, 950 F.3d 299, 309 (5th Cir. 2020). Courts have considered many special factors, including: (1) the existence of an alternative remedial structure; (2) the level of intrusion into the functions of the executive branch required; and (3) whether a plaintiff is seeking to improperly challenge policy via its damages action. *See Abbasi*, 582 U.S. at 140–46. On balance, these factors counsel hesitation here.

First, there are alternative remedial structures. Plaintiff seeks damages to compensate his loss of the 63 gold coins that were seized and never returned. As explained below, Plaintiff may pursue those claims against the Government via the FTCA. The existence of this alternative remedial structure weighs against extending *Bivens*. *Id.* at 122.

Second, allowing the *Bivens* claim to proceed would "require [the Court] to interfere in an intrusive way with sensitive functions of the Executive Branch." *Id.* at 141. By alleging that Zellhart knowingly made material misstatements to obtain the search warrant and created special search procedures that went beyond the scope of the warrant, Plaintiff seeks discovery into her knowledge and state of mind. *Ahmed*, 984 F.3d at 570. Litigation of these issues would be costly and burdensome, resulting in "'the diversion' of public resources and deterring 'able citizens from . . . public office.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982)); *Cantú*, 933 F.3d 414, 424 (5th Cir. 2019). Thus, this factor also weighs against extending *Bivens*.

No JS6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-7970-RGK-MAR | Date | March 14, 2024 |
|---|---|---|---|
| Title | *Donald Leo Mellein v. United States et al.* | | |

However, it does not appear that Plaintiff seeks to improperly challenge FBI policy. Nowhere in the FAC or briefing does Plaintiff take issue with FBI policy. Rather, he challenges Zellhart's actions alone, arguing that Zellhart deviated from FBI policy. In this manner, Plaintiff is not using his *Bivens* claim as a "vehicle for altering [FBI] policy," but merely to seek relief from Zellhart's individual actions. *Abassi*, 582 U.S. at 140–41. Accordingly, this factor weighs in favor of extending *Bivens*.

On balance, the Court finds that these factors, though not unanimous, counsel hesitation against extending *Bivens* to Plaintiff's claim. Having found both that Plaintiff's claim arises under a new context and that the special factors counsel against extending *Bivens*, the Court **DISMISSES** Plaintiff's *Bivens* claim.[2]

   2. *State Law Claims*

Plaintiff asserts several state law claims against Zellhart. Zellhart argues that these claims should be dismissed because they are preempted by the Westfall Act, 28 U.S.C. § 2679, and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671, *et seq.* Plaintiff argues that his state law claims fall within an exception for actions brought for violations of Constitutional rights. The Court agrees with Zellhart.

Under the Westfall Act, the FTCA provides the exclusive remedy for injury or loss of property resulting from the negligent or wrongful act or omission by an employee of the United States acting within the scope of her office or employment. 28 U.S.C. § 2679(b)(1). Under the FTCA, the employee defendant must be substituted by the Government, effectively extinguishing any claims against the employee directly. *See id.* § 2679(d)(1). There are two exceptions to the Westfall Act, however. The Westfall Act does not apply to a civil action "(A) which is brought for a violation of the Constitution of the United States, or (B) which is brought for a violation of a statute of the United States under which such action against an individual is otherwise authorized." *Id.* § 2679(b)(2)(A)–(B).

Here, Plaintiff's state law claims against Zellhart each seek damages based on his alleged loss of property resulting from Zellhart's actions within the scope of her employment.[3] Accordingly, the Westfall Act and the FTCA would seem to apply. However, Plaintiff argues that the exception set forth in § 2679(b)(2)(A) applies because Plaintiff's state law claims are premised on violations of Plaintiff's Fourth Amendment rights. While the language of § 2679(b)(2)(A) broadly suggests that any action brought for Constitutional violations may escape the FTCA's exclusivity, Supreme Court authority

---

[2] In her Motion, Zellhart alternatively argues that, even if Plaintiff's *Bivens* claim could proceed, it would still fail because Zellhart is shielded by qualified immunity and the statute of limitations has lapsed. Because the Court dismisses the *Bivens* claim, the Court need not decide these issues.

[3] On January 16, 2024, the same day that Defendants filed their Motions to Dismiss, Zellhart filed a Notice of Substitution, substituting herself with the Government. This Notice also included a certification that she was working within the scope of her employment. (Notice of Substitution, ECF No. 61.)

No JS6

UNITED STATES DISTRICT COURT  
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-7970-RGK-MAR | Date | March 14, 2024 |
|---|---|---|---|
| Title | *Donald Leo Mellein v. United States et al.* | | |

suggests otherwise. In *United States v. Smith*, the Supreme Court explained that this provision applies only to "a *Bivens* action[] seeking damages for a constitutional violation by a Government employee." 499 U.S. 160, 167 (1991). The Supreme Court further warned against expanding these exceptions, noting that "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Id.* (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17 (1980)). Accordingly, at least one district court has rejected attempts to bring state law claims under this exception, finding it contrary to the Supreme Court's interpretation in *Smith*. *Quiñonez v. United States*, 2023 WL 5663156, at *3 (N.D. Cal. Aug. 30, 2023) (rejecting a plaintiff's claim under California's Bane Act for violation of civil rights because "[a] Bane Act claim is neither a *Bivens* action nor an action brought under a federal statute, and thus would be futile under *Smith*.").

Nonetheless, Plaintiff cites to a concurrence in a D.C. Circuit opinion, *Buchanan v. Barr*, which he argues suggests a broader interpretation of § 2679(b)(2)(A). 71 F.4th 1003, 1016 (D.C. Cir. 2023) (Walker, J., concurring). In *Buchanan*, the D.C. Circuit affirmed the dismissal of several *Bivens* claims. *Id.* at 1006. In a concurrence, Judge Walker suggested that if the plaintiffs filed state tort claims for constitutional injuries (which they did not), those claims theoretically could have survived under § 2679(b)(2)(A) as claims "brought for a violation of the Constitution." *Id.* at 1017–18. There are several flaws in Plaintiff's reliance on this concurrence, however. First, a D.C. Circuit concurrence is of very little weight here, in the Ninth Circuit. Indeed, it appears that this case would be of little weight even within the D.C. Circuit because the concurrence is almost entirely dicta; Judge Walker recognized that the applicability of § 2679(b)(2)(A) to state claims was not an issue because "the protesters did not file those claims in this case." *Id.* at 1017–18. Second, Judge Walker did not even conclude that § 2679(b)(2)(A) allows state law claims premised on Constitutional violations. Rather, he admitted: "I'm not certain whether the Westfall Act is best read to allow state tort suits for constitutional injuries. . . . I hope the Act gets close attention in an appropriate case." *Id.* at 1017. For these reasons, the Court declines Plaintiff's invitation to rely on *Buchanan*.

Accordingly, the Court finds that the Westfall Act and the FTCA apply, thus Zellhart properly substituted herself with the Government as defendant for each of the state law claims. Because Zellhart is no longer the defendant to these claims, the Court **DISMISSES** the state law claims as to her.

      3.    <u>*Due Process Claim*</u>

Plaintiff also asserts a claim against Zellhart under the Fifth Amendment's Due Process Clause. Plaintiff contends that if Zellhart and the Government succeed in dismissing Plaintiff's other claims, Zellhart and the Government will have violated his due process by eliminating all remedies for the deprivation of his property. There are multiple issues with this claim, however. First, it does not appear to be a cognizable claim. Plaintiff appears to concede this. Second, the specific form of relief sought is not entirely clear. And third, while the Court finds that no claims may be brought against Zellhart, as

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-7970-RGK-MAR | Date | March 14, 2024 |
|---|---|---|---|
| Title | *Donald Leo Mellein v. United States et al.* | | |

discussed below, the Court finds that Plaintiff may have valid claims against the Government, thereby assuaging Plaintiff's due process concerns. For these reasons, the Court **DISMISSES** Plaintiff's due process claim as to Zellhart.

Having dismissed each of the claims against Zellhart, the Court accordingly **GRANTS** the Motion and **DISMISSES** Zellhart from this action altogether.

**B.     The Government's Motion**

As sovereign, the Government is immune from suit unless it "unequivocally express[es]" its consent to be sued. *Tobar v. United States*, 639 F.3d 1191, 1195 (9th Cir. 2011) (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980)). Without a waiver of sovereign immunity, a court lacks jurisdiction over claims against the federal government. *Id.* One such waiver is the FTCA, which allows plaintiffs to sue the Government for tortious injuries or losses suffered because of "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or his employment." 28 U.S.C. § 1346(b)(1).

Plaintiff asserts numerous claims against the Government, including three claims under the FTCA. As an alternative basis for relief, Plaintiff asserts a claim under the Fifth Amendment's Due Process Clause, arguing that if there are no remedies available under the FTCA, he has been deprived of property without due process of law. Finally, as discussed above, Zellhart properly substituted herself with the Government in the state law claims asserted against her. The Court discusses each category of claims in turn, beginning with the claims asserted under the FTCA.

   1.     *FTCA Claims*

Plaintiff asserts claims under the FTCA for: (1) breach of bailment; (2) conversion and trespass to chattels; and (3) negligence. The Government argues that Plaintiff's breach of bailment claim should be dismissed because Plaintiff did not voluntarily deliver his property to the FBI, and therefore, did not enter into a bailment agreement. Because Plaintiff does not address this argument in his Opposition, the Court **DISMISSES** the breach of bailment claim. *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (determining that a plaintiff had "abandoned claims by not raising them in opposition to the defendant's motion for summary judgment.") (citing *Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005)) (cleaned up).

Additionally, the Government argues that the Court lacks subject matter jurisdiction over the FTCA claims because the FTCA bars Plaintiff from bringing claims related to "the detention of any goods, merchandise, or other property by any . . . law enforcement officer" unless the following four criteria are satisfied:

No JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-7970-RGK-MAR | Date | March 14, 2024 |
|---|---|---|---|
| Title | ***Donald Leo Mellein v. United States et al.*** | | |

(1) the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;

(2) the interest of the claimant was not forfeited;

(3) the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and

(4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.

28 U.S.C. § 2680(c)(1)–(4). The Ninth Circuit has held that property satisfies the first requirement only if it was "seized *solely* for the purpose of forfeiture." *Foster v. United States*, 522 F.3d 1071, 1075 (9th Cir. 2008) (emphasis added). In other words, property seized by law enforcement for investigatory purposes and later subjected to forfeiture proceedings does not meet this requirement. *Id.* at 1079.

Here, the parties do not meaningfully dispute that Plaintiff's claims involve goods detained by law enforcement. Instead, the parties disagree regarding whether Plaintiff has alleged that the property was seized solely for the purpose of forfeiture. Plaintiff argues that he has made exactly this allegation, since he alleges that the FBI seized only the nests for law enforcement purposes, then subsequently searched the individual boxes contained within the nests for contents sufficiently valuable to be forfeitable. The Government contends that Plaintiff has alleged that the FBI seized the property at issue for both investigatory and forfeiture purposes.

The Government's argument is unpersuasive. Plaintiff specifically alleges that the FBI's warrant application "sought to seize 'the nests of boxes themselves, not their contents.'" (FAC ¶ 37 (emphasis in original).) Moreover, Plaintiff alleges that the FBI planned to "administratively forfeit all boxes containing property worth at least $5,000 (the FBI's minimum threshold for profitability), and to conduct investigatory searches of the boxes for evidence to support the forfeitures." (*Id.* ¶ 4.) These statements allege that Plaintiff's property was not seized for any purpose other than "for the purpose of forfeiture." 28 U.S.C. § 2680(c)(1).

The Government make no additional arguments for dismissal of the conversion and negligence claims. Accordingly, the Court **DENIES** the Motion with respect to the remaining FTCA claims.

    2.     *Due Process Claim*

Plaintiff also asserts a claim against the Government under the Fifth Amendment's Due Process Clause. As discussed above, however, this claim fails because it is not a cognizable claim, the form of

No JS6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:23-cv-7970-RGK-MAR | Date | March 14, 2024 |
|---|---|---|---|
| Title | *Donald Leo Mellein v. United States et al.* | | |

relief sought is unclear, and Plaintiff has other potentially viable claims against the Government. Accordingly, the Court **DISMISSES** the due process claim.

    3.    *State Law Claims*

As discussed above, the Government has been properly substituted as the defendant in the state law claims asserted against Zellhart. Plaintiff apparently concedes that these claims cannot proceed against the Government, since the FTCA is the appropriate remedial avenue for claims against the sovereign. Accordingly, the Court **DISMISSES** the state law claims asserted against Zellhart.

**V.    CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Zellhart's Motion and **DISMISSES** her from this action. In addition, the Court **GRANTS in part** the Government's Motion and **DISMISSES** the breach of bailment claim, due process claim, and state law claims for which it has been substituted as defendant. The Court **DENIES** the Motion with respect to Plaintiff's remaining FTCA claims.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | JRE/ak |